UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA FOR THE USE AND BENEFIT OF LWIC DECKS L.L.C.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 14-2784** |
| **CLARK CONSTRUCTION GROUP, L.L.C., MCCARTHY BUILDING COMPANIES, INC., d/b/a CLERK/MCCARTHY HEALTHCARE PARTNERS, A JOINT VENTURE, TRAVELERS CASUALTY AND SURETY CO., FEDERAL INSURANCE COMPANY AND ZURICH AMERICAN INSURANCE COMPANY** | **SECTION: "S" (5)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Progressive Services, Inc.'s Motion for Summary Judgment (Doc. #37) is **DENIED**.

### BACKGROUND

This matter is before the court on a motion for summary judgment filed by defendant, Progressive Services, Inc.

Clark Construction Group, L.L.C. and McCarthy Building Companies, Inc. entered into a joint venture known as Clark/McCarthy Healthcare Partners to act as the general contractor for a project relating to the Southeast Louisiana Veterans Healthcare System Replacement Hospital Project in New Orleans, Louisiana, which was owned by an agency of the United States Government. Clark/McCarthy entered into a subcontract with Progressive. On September 9, 2012, Progressive entered into a subcontract with plaintiff, LWIC Decks, L.L.C., under which LWIC provided labor and materials to install a lightweight insulation concrete roof deck system on the project for a price of $1,164,800.

The subcontract between Progressive and LWIC was on the AIA Document A401™ -2007 Standard Form Agreement Between Contractor and Subcontractor, with some changes indicated in the left hand margin. Article 13 related to insurance and bonds, and provided, in pertinent part:

> **§ 13.7** Performance Bond and Payment Bond:
> *(If the Subcontractor is to furnish bonds, insert the specific requirements here.)*
>
> | Bond Type | Bond amount ($0.00) | Bond delivery date | Bond form |
> |---|---|---|---|
> | Performance and Payment bonds required on Clark/McCarthy forms. Contract price includes bonds. | 1,164,800.00 | | Clark/McCarthy forms - Attached. |

Dean Morton, a Managing Member of LWIC, signed the subcontract on LWIC's behalf and initialed all of the pages.

On June 6, 2014, Clark/McCarthy informed Progressive that it was withholding $100,000 of the May 2014 progress payment due to a quality issue concerning moisture on LWIC 's work. On June 25 and 26, 2014, Steve Maples of Progressive and Morton exchanged a series of emails regarding LWIC's obligation to obtain performance and payment bonds. First, Maples emailed Morton asking for copies of LWIC's performance and payment bonds. Morton responded: "I thought you told me in the beginning of the negotiation process that we would not have to provide a bond." Maples replied: "I told you I thought you were covered under ours but Scott said no and that's why it's in your contract. I need copies before I can release your May payment!" Morton again responded that it was his "understanding that the P&P bond was not require[d]" and it was not obtained. In that same email, Morton demanded payment for the work that was completed. Michael

Hadden of Progressive replied that Progressive has a check ready to send to LWIC for the product in place, but:

> Before we release checks we validate the appropriate insurance and bonds are in place. It became apparent today that we do not have the P&P bonds required by our executed contract with LWIC. The performance and payment bonds are a critical component of the contract terms. Your bonds protect your vendors, [Clark/McCarthy] and Progressive . . . Our bonds protect everybody. It is for that specific reason the clause requiring bonding is in the contract. Even though Progressive has posted P&P bonds to [Clark/McCarthy], we are required by our owners/bonding company/bank to bond our subcontractors. I cannot authorize the release of your payment until this contractual matter is remedied. When can we expect the . . . performance and payment bonds stipulated in our executed contract?"

Morton responded that "[t]he bond was not provided as it was our understanding that we did not need to. However, due to the clarification we will request the bond and will send it to you as soon as we get it." Hadden replied that the contract requires LWIC to provide the performance and payment bonds and asks if LWIC is going to provide it. Morton replied that LWIC "will be getting the bond."

On July 7, 2014, Tupac De la Cruz of LWIC wrote to Mike Madden at Progressive stating that LWIC understood from communications between Morton and Maples that LWIC was not required to issue the performance and payment bonds because Progressive furnished the owner with performance and payment bonds that covered LWIC's work. De la Cruz states that he believes LWIC's work would be covered by Progressive's bonds, and that Progressive "is simply looking for an excuse not to pay LWIC for work performed." He states that Progressive's failure to pay LWIC is a breach of contract, and demands payment.

3

On August 7, 2014, Progressive terminated the subcontract due to LWIC's failure to provide the performance and payment bonds. Progressive justified the termination under section 7.2.1 of the subcontract which provided:

> If the Subcontractor repeatedly fails or neglects to carry out the Work in accordance with the Subcontract Documents or otherwise perform in accordance with this Subcontract and fails within a ten-day period after receipt of written notice to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may, by written notice to the Subcontractor and without prejudice to any other remedy the Contract may have, terminate the Subcontract and finish the Subcontractor's Work by whatever method the Contractor may deem expedient.

On December 9, 2014, LWIC filed this action under the Miller Act, 40 U.S.C. § 3131, *et seq.*, against Clark/McCarthy and the insurance companies that underwrote Clark/McCarthy's performance and payment bonds for the project, alleging that it was owed a balance of $103,698.00 for the labor and materials it provided for the project, plus a 15% penalty, attorneys' fees and interest. Thereafter, LWIC filed an amended complaint adding Progressive as a defendant and alleging that Progressive was liable in solido with the other defendants for the Miller Act claim, and also alleging a breach of contract claim against Progressive seeking an award of lost profits. On October 14, 2015, this court granted the parties' joint motion to dismiss all of LWIC's claims except its breach of contract claim against Progressive.

Progressive moves for summary judgment on that claim arguing that it did not breach the subcontract because it terminated LWIC for cause under section 7.2.1 due to LWIC's breach of the subcontract for failing to obtain performance and payment bonds. Progressive contends that the subcontract unambiguously requires LWIC to provide the performance and payment bonds, which LWIC failed to do. Thus, Progressive contends that LWIC is not entitled to an award of lost profits.

4

Progressive also argues that it is entitled to attorneys' fees as damages due to LWIC's failure to honor the terms of the subcontract.

    LWIC argues that Progressive is not entitled to summary judgment because there are genuine issues of material fact regarding whether it was required to provide performance and payment bonds. LWIC contends that the terms of the subcontract did not require it to provide performance and payment bonds to Progressive. LWIC argues that the document refers to the agreement between LWIC and Progressive as the "Subcontract" and the agreement between Progressive and Clark/McCarthy as the "Contract." Thus, the statement in section 13.7 under "Bond type" that says "Performance and Payment bonds required on Clark/McCarthy forms. Contract price includes bonds" refers to the contract between Clark/McCarthy and Progressive because the document refers to that agreement as the "Contract." LWIC also contends that no performance and payment bonds were required because the section 13.7 states that the "Bond amount" is "$0.00", there is no bond delivery date, and there were no Clark/McCarthy bond forms attached to the document. Further, LWIC argues that Progressive's termination of the subcontract was improper under section 7.2.1 because Progressive notified LWIC of its failure to provide the performance and payment bonds, but the bonds were not required, and therefore, there were no grounds for termination of the subcontract.

## ANALYSIS

**I.    Summary Judgment Standard**

    Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Granting a motion for summary judgment is proper if

the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2509-10 (1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson, 106 S.Ct. at 2510).

If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**II.     Contract Interpretation**

In Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC, 112 So.3d 187, 192 (La. 3/19/13) (citations and quotations omitted), the Supreme Court of Louisiana explained the law applicable to contract interpretation:

> Contracts have the effect of law for the parties and the interpretation of a contract is the determination of the common intent of the parties.

6

> The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties. However, even when the language of the contract is clear, courts should refrain from construing the contract in such a manner as to lead to absurd consequences. Most importantly, a contract must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance. Moreover, a contract provision that is susceptible to different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.

However, if the "written expression of the common intention of the parties is ambiguous," parol or extrinsic evidence is admissible to interpret the contract. Campbell v. Melton, 817 So.2d 69, 75 (La. 2002) (citing Ortego v. State, Through the Dep't of Transp. & Dev., 689 So.2d 1358 (La. 1997)). "A contract is considered ambiguous on the issue of intent when either it lacks a provision bearing on that issue, the terms of a written contract are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed." Id. (citations omitted). Ambiguous contractual terms are construed against the drafter of the contract. Id.

The contract is ambiguous as to whether LWIC was required to obtain payment and performance bonds. Although the bond amount in section 13.7 is listed as $1,164,800.00, which is the price of LWIC's work under the subcontract, the rest of section 13.7 is ambiguous. The

7

document refers to the agreement between LWIC and Progressive as the "Subcontract." However, section 13.7 refers to the "contract price" as including the bonds. Due to the inconsistency in the terms, it is unclear whether "contract" refers to the "Subcontract" or the contract between Progressive and Clark/McCarthy. Also, there is no date listed for the bond delivery. Further, under "Bond form" it is indicated that Clark/McCarthy bond forms were attached to the document. Progressive filed the affidavit of Michael Hadden with its motion for summary judgment in which he declares that a copy of the subcontract is attached as Exhibit A. That document does not have any Clark/McCarthy bond forms attached to it. The contract does not completely specify the requirements of the performance and payment bonds. Therefore, the contract is ambiguous. Progressive did not meet its burden of establishing that the subcontract unambiguously required LWIC to obtain performance and payment bonds. Progressive's motion for summary judgment is DENIED.

## CONCLUSION

**IT IS HEREBY ORDERED** that Progressive Services, Inc.'s Motion for Summary Judgment (Doc. #37) is **DENIED**.

New Orleans, Louisiana, this  20th  day of January, 2016.

                                              *Mary Ann Vial Lemmon*
                                              **MARY ANN VIAL LEMMON**
                                              **UNITED STATES DISTRICT JUDGE**